ALBERT CONSTABLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Constable v. Commissioner
Docket No. 30684-87
United States Tax Court
T.C. Memo 1989-554; 1989 Tax Ct. Memo LEXIS 552; 58 T.C.M. (CCH) 357; T.C.M. (RIA) 89554; October 10, 1989
Lawrence M. Reisman and Paul Kerson, for the petitioner. Peggy Gartenbaum, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax and additions to tax for the taxable year 1986 as follows: Additions to Tax
Deficiency
6651(a)(1) [1]
6653(a)(1)
6653(a)(1)(B)
6654(a)
6661
$ 16,900
$ 1,690
$ 845 *
$ 331.40
$ 4,225
After concessions by petitioner, the issues for our decision are: (1) Whether petitioner's gross income for the taxable year 1986 included money seized by agents of the Drug Enforcement Administration in the amount of $ 26,380; and (2) whether petitioner is liable for an addition to tax pursuant to section 6661. [2]
*554 FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Albert Constable (petitioner) resided in Brooklyn, New York, at the time he filed his petition in this case. On April 16, 1986, petitioner was preparing to board Pan Am flight #403 from John F. Kennedy Airport in Queens, New York, bound for Miami, Florida, when he was questioned by agents of the Drug Enforcement Administration (DEA). Petitioner's airline ticket to Miami was a one-way ticket and was purchased with cash. He was traveling to Miami under the name David Franklin. Pre-flight screening of petitioner's carry-on luggage revealed that petitioner was in physical possession of $ 26,380 in U.S. currency. When questioned by DEA agents, petitioner stated that the money found in his possession was not his, but was family money to be given to a Mr. Clifford Wardy in Orlando, Florida, for the purchase of real estate. After the money was seized, petitioner claimed that the money was his and that he had saved it over a period of years. Petitioner told the DEA agents that he was previously arrested *555 only once, and the arrest was for having obstructed government administration. Petitioner's arrest record is as follows: Date of
Reason for
Arrest
Arrest
Date of Plea
Plea
March 18, 1980
Criminal
May 30, 1980
Guilty of
Possession of
Disorderly
Marijuana
Conduct
March 7, 1984
Criminal Sale
March 14, 1984
Guilty of
of Marijuana
Attempted
Sale
January 30, 1985
Criminal Possession May 10, 1985
Guilty of
of Controlled
Possession
Substance
April 17, 1988
Possession of
Case Pending
Stolen Weapon
Petitioner's Federal income tax returns for the taxable years 1980 through 1985 were filed in 1987. Petitioner's adjusted gross income for the taxable years 1980 through 1985 as shown on those returns is as follows: Taxable Year
Adjusted Gross Income
1980
$ 12,000
1981
13,000
1982
13,000
1983
13,000
1984
15,000
1985
19,200
Petitioner has not filed a Federal income tax return for the taxable year 1986 and respondent has made a termination assessment against petitioner for that year. Petitioner did not provide any information to the revenue agent nor was the *556 revenue agent able to locate any documents concerning petitioner's income for 1986. Petitioner has been a self-employed handyman since 1980. He kept no books and records of his business and dealt whenever possible in cash. Petitioner and Lorna Constable were married in 1971 but have been separated and living in separate households since approximately 1982. Their two children live with their mother. In addition to supporting himself, petitioner has provided financial help to his two children during this period. In determining the amount of petitioner's income for the taxable year 1986, the revenue agent used a chart prepared by the Community Council of Greater New York outlining the weekly budget for a family of two living in New York City in 1980 adjusted for 1986 by statistics published by the Bureau of Labor Statistics. Petitioner's gross income was computed for the taxable year 1986 based upon a $ 240.90 weekly cost of living, adjusted by an inflation factor of 32.5 percent. The result was multiplied by 52 to obtain the yearly living expenses for a family of two in New York City in 1986. The cost of living was determined for two rather than three people because the revenue *557 agent was unaware that petitioner was not supporting his wife but was, instead, supporting his two children. Based upon these calculations, petitioner's estimated cost of living for 1986 was $ 16,598. The following chart shows how much income petitioner could have saved from 1980 through 1985 using the revenue agent's cost of living analysis: Weekly Cost of
Living Times
Yearly
Total
Income
Inflation
Yearly Cost
Savings
Savings
Year
Reported
Factor
of Living
(Deficit)
(Deficit)
1980
$ 12,000
$ 240.90
$ 12,527.00
($ 527.00)
($ 527.00)
1981
13,000
260.89
13,566.00
(566.00)
(1,093.00)
1982
13,000
274.46
14,272.00
(1,272.00)
(2,365.00)
1983
13,000
286.54
14,900.00
(1,900.00)
(4,265.00)
1984
15,000
300.00
15,600.00
(600.00)
(4,865.00)
1985
19,200
311.11
16,178.00
3,022.00 (1,843.00)
By analyzing petitioner's cost of living for the taxable years 1980 through 1985, in light of petitioner's reported income for those years, the revenue agent determined that petitioner could not have saved $ 26,380 during this period of time and thus included this amount in *558 petitioner's income for the taxable year 1986. The Commissioner determined a deficiency in petitioner's Federal income taxes for the taxable year 1986 in the amount of $ 16,900. In addition, the Commissioner determined that petitioner was liable for additions to tax pursuant to sections 6651(a)(1), 6653(a)(1)(A), 6653(a)(1)(B), 6654(a), and 6661. OPINION Issue 1. Seized Cash as Gross Income
Petitioner does not contest respondent's use of cost of living tables to determine petitioner's gross income. Petitioner, however, argues that respondent cannot use the cost of living tables for the further purpose of determining how much money petitioner spent during the taxable years 1980 through 1985 in order to determine that petitioner could not have saved $ 26,380. With respect to the taxable years 1980 through 1985 petitioner did not file Federal income tax returns until 1987. He never filed a Federal tax return for 1986. Petitioner did not produce any information to the revenue agent from which a determination of his income for 1986 could be based. He maintained no books and records and admitted in his brief that whenever possible he dealt in cash. Because the agent *559 could not locate any documents which would establish the amount of petitioner's income, he determined petitioner's income for 1986 based upon a chart prepared by the Community Council of Greater New York, adjusted for 1986 by statistics published by the Bureau of Labor Statistics. These statistics reflect the average living costs of similar families in the same locality, thus providing a basis for a determination as accurate as could be made without disclosure from petitioner as to his living costs and his children's living costs. Based upon this calculation, the agent estimated petitioner's cost of living to be $ 16,598. With respect to the cash seized by DEA agents, the revenue agent analyzed petitioner's cost of living for the taxable years 1980 through 1985 in light of petitioner's reported income for those years and concluded that petitioner could not have saved $ 26,380 during this period of time. Thus, $ 26,380 was included in petitioner's gross income in 1986. The Commissioner may use any method that clearly reflects income if no records have been kept by the taxpayer from which actual income can be determined. Sec. 446(b). The Commissioner's determinations are presumptively *560 correct, , and petitioner bears the burden of proving them to be erroneous. Rule 142(a). In the absence of records, respondent can use indirect methods of proof to reconstruct the taxpayer's income. The method used in this case has been approved by this Court. . Using the cost of living charts, petitioner's gross income for 1986 was determined based solely upon an estimate of the amount of petitioner's personal living expenses for the taxable years 1980 through 1986. This theory is based upon the assumption that petitioner had income at least equal to the normal cost of supporting a family of two. Based upon the fact that the normal cost of supporting a family of two from 1980 through 1985 exceeded petitioner's income for all years but one, it is inconceivable that petitioner could have saved $ 26,380 over this period of time. [3]
Petitioner has offered no evidence whatsoever as to the amounts *561 or sources of his income, nor has he claimed that he was in possession of a large amount of money prior to 1980. Petitioner testified that he saved the $ 26,380 from income earned over a period of years and that he kept this money in his residence in the form of cash. He argues in his brief that his testimony is plausible and need not be corroborated. However, we are not bound to accept a taxpayer's testimony at face value even when it is uncontradicted if it is improbable, unreasonable, or questionable. . We find petitioner's testimony to be improbable, unreasonable, and questionable. Petitioner admitted in his brief that he was part of what he refers to as an "underground economy." We are not aware of what this "underground economy" is; however, based upon petitioner's arrest record and testimony, we are confident that income earned by individuals who are members of such "economy" does not originate from legal sources. Although this inference does not, by itself, establish that petitioner was a drug dealer, it does cast doubt on his credibility. Further casting a shadow of doubt over his credibility is the *562 fact that he lied to DEA agents regarding his arrest record, his use of an alias, and his testimony contradicting his statement to DEA agents that the cash found in his possession was not his. Gross income is defined by section 61 as all income from whatever source derived. Respondent included in petitioner's gross income for the taxable year 1986, the cash seized by DEA agents from petitioner in the amount of $ 26,380. Petitioner has failed to sustain his burden of proof establishing that this amount was earned in a different year or that the taxable income for 1986 was less than that determined by respondent. Issue 2. Section 6661
The Commissioner determined that there was a substantial understatement of petitioner's Federal income tax for the taxable year 1986 pursuant to section 6661. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1)(A). Petitioner failed to file a Federal income tax return for the taxable year 1986. Petitioner argues that we should reconsider our opinion in . In Woods, the taxpayer argued *563 that as he failed to file an income tax return he could not have an understatement of tax pursuant to section 6661. The taxpayer's argument failed in Woods as it does here. Petitioner's arguments requesting our reconsideration of Woods are without merit. As a result, petitioner's total deficiency for 1986 is $ 16,900 which is greater than both tests set forth in section 6661(b)(1)(A). We sustain the addition to tax pursuant to section 6661. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable year 1986 and all rule numbers refer to the Rules of Practice and Procedure of this Court. * 50 percent of the interest on $ 16,900.↩
2. Petitioner has conceded all of the additions to tax with the exception of sec. 6661.↩
3. In addition, respondent's calculations may be low as the revenue agent was not aware that petitioner was supporting a family of three as opposed to a family of two.↩